UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MOLLY E. STEWART,<br><br>        Plaintiff,<br><br>v.<br><br>JO ANNE BARNHART,<br>Commissioner of Social Security<br><br>        Defendant. | Case No.: C 05-02317  PVT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE FOR FURTHER FINDINGS; ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

On January 11, 2006, plaintiff Molly E. Stewart ("Stewart") filed a motion for summary judgment pursuant to the Procedural Order for Social Security Review Actions. Defendant, the Commissioner of the Social Security Administration ("Commissioner"), opposed the motion and filed a cross-motion for summary judgment on March 15, 2006. Both parties have consented to proceed before a United States Magistrate Judge. Based on the administrative record and the moving and opposition briefs presented,

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is GRANTED and the case REMANDED for further findings.[1]

IT IS FURTHER ORDERED that defendant's cross-motion for summary judgment is

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

DENIED.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Stewart is a 37 year-old female (DOB 6/24/70), who was 32 years old at the onset of her alleged disability. She graduated from high school and completed one year of college. Stewart's past relevant work experience includes her employment as an answering service operator, bank teller and stock room clerk. At the hearing, Stewart testified that she was first diagnosed with sarcoidosis in December 2001. (Tr.[2] 251).

On January 21, 2002, Stewart was admitted to the Northern California Kidney Stone Center. Upon admission, Dr. Jacqueline Pelavin noted a diagnosis of "sarcoidosis and a 1.7 x 1.0 cm non-obstructing right renal pelvic stone." (Tr. 176). From April 16, 2002 through November 19, 2002, Stewart's diagnosis was confirmed at Kaiser and was prescribed continued doses of prednisone. (Tr. 161, 169, 175).

On April 21, 2003, Stewart had her first medical appointment with Dr. Nancy Cuan. (Tr. 148). She also confirmed the sarcoidosis diagnosis and continued Stewart's prednisone therapy. (Tr. 212).

On September 18, 2003, Stewart filed an application for Disability Insurance Benefits. Specifically, she stated that due to her disease, on occasion, she didn't have the strength to get out of bed. (Tr. 84). Because of her disease, Stewart stated that she had been unable to work since June 24, 2002. Stewart further stated that she had been wrongfully terminated due to her numerous medical appointments, her need to consult numerous medical specialists before her disease was finally diagnosed, and her continued need to attend additional medical appointments. (Tr. 84).

On October 17, 2003, Stewart had another appointment with Dr. Cuan. (Tr. 149). Stewart complained to her of leg and back aches, nose bleeds, cough, fatigue and skin lesions. (Tr. 207-208).

On October 23, 2003, Dr. Clark E. Gable examined Stewart. He concluded that Stewart

---

[2] As used herein, "Tr." refers to the Administrative Transcript filed herein on September 12, 2005.

could sit for unlimited lengths of time and stand and/or walk up to 6 hours on mostly level ground. Dr. Gable also noted that Stewart should do very little climbing and that she could lift, push or pull 25 pounds on a regular basis, and perhaps 40 pounds on an occasional basis. He did not observe any limitations on Stewart's fine finger and hand movements. (Tr. 178-79).

On December 8, 2003, Dr. John H. Wehner examined Stewart and later set forth his findings to Dr. Cuan. (Tr. 199-201). Dr. Wehner noted that Stewart complained of blurry vision and shortness of breath following approximately one block of walking. (Tr. 199). Dr. Wehner also noted that Stewart had positive biopsies of her skin and her nose. (Tr. 199). He further noted that Stewart smokes approximately a half pack of cigarettes per day as well as marijuana. (Tr. 199).

On December 9, 2003, Dr. Ed Gallagher conducted a Physical Residual Functional Capacity Assessment of Stewart. (Tr. 184-91). He concluded that Stewart could occasionally lift and/or carry 40 pounds, frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday and push and/or pull without any further limitations than those mentioned for lift and/or carry. (Tr. 185). Dr. Gallagher also concluded that Stewart had no postural limitations, no manipulative limitations, no visual limitations and no communicative limitations. (Tr. 186-88).

On December 30, 2003, the Social Security Administration denied Stewart's claim for disability benefits. (Tr. 26). On January 22, 2004, Stewart requested reconsideration of her disability claim. (Tr. 30). On May 7, 2004, Stewart's claim was denied on reconsideration. (Tr. 25). Stewart requested a hearing, which was held on October 28, 2004, in San Jose, California, before Administrative Law Judge T. Patrick Hannon ("ALJ"). At the hearing, Stewart testified that June 24, 2002 was her last day of work and that she had not worked since that date. (Tr. 238). Stewart also testified that, when she had been working, she had had approximately five medical appointments per month, and that each appointment caused her to miss three to four hours of work. (Tr. 246).

On November 4, 2004, Stewart's attorney spoke with Dr. Nancy Cuan. During the

1 conversation, Stewart's attorney asked her questions and Dr. Cuan provided answers, often
2 elaborating when necessary.  Dr. Cuan attested to the conversation by signing a transcript of it,
3 which was included in the administrative record and identified as "Declaration of Nancy Cuan,
4 M.D.."  (Tr. 148-59).  Dr. Cuan estimated that Stewart should do "no more than a combination of
5 sitting, standing and walking four to six hours a day, five days out of the week."  (Tr. 155).  She
6 further stated that Stewart would need three to four unscheduled breaks, for a half hour to an
7 hour each, if she were working a full eight-hour workday.  (Tr. 156).  Dr. Cuan also estimated
8 that Stewart would miss all or portions of four to five workdays a month due to her condition and
9 frequent doctor visits.  (Tr. 156-7).

10 On December 20, 2004, the ALJ rendered an unfavorable decision.  (Tr. 16-20).  On
11 April 14, 2005, the Appeals council denied Stewart's Request for Review.  (Tr. 7-9).
12 Consequently, the ALJ's decision because the final decision of the Commissioner.

**II.    LEGAL STANDARDS**

To qualify for disability benefits, a claimant must show that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity and that the impairment is expected to last for a continuous period of at least twelve months (or result in death).  *See* 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process is used to determine whether a claimant is "disabled." *See* 20 C.F.R.§ 404.1520.  The first step is to consider whether the claimant is engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the Commissioner proceeds to step two.

The second step is to assess whether the claimant suffers from a "severe" impairment.  If not, the claimant is not disabled.  If the claimant does suffer from a "severe" impairment, the Commissioner proceeds to step three.

The third step is to examine whether the claimant's impairment or combination of impairments meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  If so, the claimant is automatically deemed disabled.  If not, the Commissioner proceeds to step four.

ORDER, *page 4*

Before proceeding to step four, the Commissioner must make an assessment of the claimant's residual functional capacity, which is used to evaluate the claim at steps four and five.

The fourth step determines whether the claimant is capable of performing her past relevant work. If so, she is not disabled. If not, the Commissioner proceeds to step five.

Finally, the fifth step is to determine whether the claimant has the residual functional capacity to perform any other substantial gainful activity in the national economy. If not, the claimant is disabled. The burden lies with the claimant to establish steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). In step five, the burden shifts to the Commissioner. *Id.*

In reviewing a denial of Social Security disability benefits, courts will set aside an ALJ's decision only if that decision is based on legal error or the findings of fact are not supported by substantial evidence in the record taken as a whole. *Id.* at 1097-98. Substantial evidence is "more than a mere scintilla" but "less than a preponderance;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 1427 (1971) (citation omitted); *see also, Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).

Mere presence of a disease or impairment is not enough. A claimant must show that her disease or impairment caused functional limitations that precluded her from engaging in any substantial gainful activity. *See, Alexander v. Shalala*, 927 F.Supp. 785, 792 (D.N.J. 1995). Further, it is insufficient for a claimant to show that she experienced short periods of severe impairment to the point of disability. To be entitled to benefits, the claimant must establish that the disabling severity of the impairment lasted, or could be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); *see also, Taylor v. Heckler*, 576 F.Supp. 1172, 1177 (N.D. Cal. 1983) *aff'd* 765 F.2d 872, 875 (9th Cir. 1985).

While courts must look at the record as a whole, considering both evidence that supports and that undermines the ALJ's findings, it is the ALJ's function to resolve conflicts in the evidence. *See, Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016 (9th Cir. 1992). However, even if substantial evidence supports the ALJ's factual findings, the decision may

nonetheless be set aside if the ALJ applied improper legal standards in reaching the decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

When a claimant demonstrates the existence of a condition that would cause some degree of pain or dysfunction, the ALJ must articulate specific, convincing reasons for rejecting the claimant's subjective testimony regarding her pain and limitations. *Fair v. Bowen*, 885 F.2d 597, 601-04 (9th Cir. 1989); *see also, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001). An ALJ may not reject a claimant's statements regarding her limitations merely because they are not fully corroborated by objective evidence. *See, Brunnell v. Sullivan*, 947 F.2d 341, 343-45 (9th Cir. 1991). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Disability claimants should not be penalized for attempting to lead normal lives in spite of their limitations. *See, Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *See, e.g., Cohen v. Sec'y of Dept. Of Health & Human Servs.*, 964 F.2d 524, 530-31 (6th Cir. 1992).

The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *See, Lester*, 81 F.3d at 832. An ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Id.* Clear and convincing reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Brown*, 849 F.2d 418, 422 (9th Cir. 1988). Even when the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating doctor's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Lester*, 81 F.3d at 830.

Courts may not affirm the decision of an ALJ on grounds upon which the ALJ did not rely in reaching his decision. *See, Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

## III. DISCUSSION

On October 28, 2004, a hearing was held before an ALJ to consider Stewart's application for disability benefits. The ALJ evaluated the evidence by the five-step process set forth in the

Social Security Regulations and issued his decision on December 20, 2004.

At step one, the ALJ found no evidence that Stewart had performed any gainful activity since the date of alleged onset. (Tr. 17). At step two, the ALJ found that Stewart's impairment was considered severe within the meaning of the Regulations because it significantly limited her ability to do basic work activities. (Tr. 17-18). At step three, the ALJ found that Stewart's impairment did not meet the listing criteria set forth in the Regulations and therefore she was not automatically deemed disabled. (Tr. 18). The ALJ based his decision on the Residual Functional Capacity ("RFC") assessment contained in the reports of Drs. Gable and Gallagher. At step four, the ALJ found that Stewart was capable of returning to her past relevant work as a stockroom clerk. (Tr. 18-19). Consequently, the ALJ found that Stewart was not disabled as defined by the Social Security Act. (Tr. 19-20).

In her moving papers, Stewart alleges the ALJ committed the following errors: 1) applying an incorrect standard in weighing the evidence of Dr. Cuan; 2) failing to consider the entire record when concluding that Stewart could perform "medium work;"[3] 3) failing to consider Stewart's subjective complaints; and 4) failing to compare Stewart's residual functional capacity with the demands of her past relevant work.

The Commissioner opposes the motion and states that evidence in the administrative record supports the ALJ's decision to reject Dr. Cuan's opinion.[4] However, the court finds that the ALJ did not state any of those grounds in his decision and therefore, such grounds are not considered here. (Tr. 16-20). As discussed herein, the court finds that the ALJ failed to set forth specific and legitimate reasons for rejecting Dr. Cuan's declaration and specific, convincing

---

[3] In his decision, the ALJ concluded that Stewart "retains the residual functional capacity for at least light work." (Tr. 19). In her motion, Stewart's allegation that the ALJ concluded she could perform "medium work" appears to be based upon the ALJ's finding that Stewart could lift or carry 25 pounds on a regular basis and perhaps 40 pounds on an occasional basis. As defined by the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[4] The new grounds asserted include that (i) the ALJ was right to consider whether Dr. Cuan had become an advocate; (ii) Dr. Cuan's November 6, 2004 letter, which was written just two days after her declaration was taken, was, at most, inconclusive; and (iii) Dr. Cuan's opinion was entitled to little weight simply because her medical evaluations were infrequent and undermined the probative value of the declaration.

reasons for rejecting Stewart's subjective complaints.  Additionally, the ALJ did not adequately compare Stewart's residual functional capacity with the demands of her past relevant work.

> **A.      The ALJ Failed to Identify Any Specific Evidence that Caused him to Disregard the "Declaration of Nancy Cuan, M.D."**

In the decision, the ALJ rejected Dr. Cuan's opinion which had been set forth in her declaration.  Although the declaration had been admitted into evidence at the hearing, the ALJ reached the following conclusions:

> (a) it is not a properly propounded interrogatory,
> (b) it is not a deposition,
> (c) it appears to be a transcription of a conversation or telephone conversation, but it is not transcribed by a certified short hand court reporter,
> (d) it is signed under penalty of perjury but the circumstances of the questions were under complete control of the attorney and some of the questions are leading, which makes the other questions dubious because of the lack of unbiased controls, and
> (e) there is nothing to indicate any reason why Dr. Cuan could not fill out a standard residual functional capacity (RFC) form in her office without the coaching of claimant's counsel.  The failure to submit a standard RFC form and the submission of this 'declaration' casts doubts in the mind of the undersigned as to the credibility and reliability of the statements contained therein.

With respect to the criticisms regarding the format of the declaration, the ALJ fails to provide any factual or legal justification for finding that a declaration signed under penalty of perjury is inherently less credible than a medical form or other report signed by a doctor, which may not have been signed under penalty of perjury.[5]  Under Ninth Circuit precedent, an ALJ cannot reject medical findings based solely upon the purpose for which the report was obtained or upon the assumption that doctors routinely lie in order to help their patients collect disability benefits.  *Lester*, 81 F.3d at 832.  In this case, the ALJ rejected Dr. Cuan's opinion without

---

[5] If an ALJ wants more information about the basis of a doctor's opinion, he has the ability to obtain it by subpoenaing the claimant's doctors for additional records (or live testimony), submitting questions to the claimant's doctors, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  *See, Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *see also, Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

At the time of the hearing, Dr. Cuan had not yet signed her declaration and the ALJ agreed to keep the record open after the hearing to allow Stewart an opportunity to supplement the record.

specifically identifying any evidence in the record to support his subjective determination.

While the ALJ complains about the format of the declaration, the real complaint may be that the medical opinion was obtained as evidence for the hearing and that his personal preference against presenting evidence in this manner was ignored. At the hearing, the ALJ informed Stewart's attorney that he did not want the treating physician's declaration to be transcribed as a statement later signed by the physician. (Tr. 233-35).

Other than the unwarranted objection to the format of the declaration, the ALJ has not offered any specific and legitimate reasons for determining that the Dr. Cuan's declaration was not credible. A court may not affirm an ALJ's decision to disregard Dr. Cuan's declaration based on the grounds argued by the Commissioner. Instead, a court must rely on reasons actually invoked by the ALJ in reaching the decision. *Pinto*, 249 F.3d at 847.

### B.     ALJ's Findings on Stewart's Residual Functional Capacity

Based on the Residual Functional Capacity ("RFC"), the ALJ found that Stewart was able to sit for unlimited lengths of time; stand and/or walk up to six hours; lift, push or pull 25 pounds regularly and 40 pounds occasionally; and that she has no limitation on fine finger and hand movements. The ALJ relied on the opinions of Drs. Gable and Gallagher to interpret the RFC.

The ALJ did not consider Dr. Cuan's declaration in making his RFC assessment. Without any specific and legitimate reasons for rejecting Dr. Cuan's declaration, Stewart's RFC should be reconsidered in light of Dr. Cuan's opinion as well. Specifically, her conclusions that Stewart only has the capacity to sit, stand or walk for no more than a combined total of four to six hours a day, five days a week.

### C.     Stewart's Subjective Complaints

The ALJ concluded that Stewart's allegations regarding her limitations were not totally credible was based upon Stewart's answers on the "Exertional Daily Activities Questionnaire Since Your Disability Began." (Tr. 93-96). Examination of the record shows that the ALJ

considered only portions of Stewart's questionnaire answers and his paraphrasing is not entirely accurate. The ALJ stated in pertinent part as follows:

> While it is true the record shows evidence of an impairment that may cause difficulties for the claimant in the performance of some job related activities, the evidence nevertheless fails to establish the level of functional limitation as alleged by the claimant. The claimant states that she 'can't lift [presumably at all],' yet she carries groceries from her car to her house. The claimant is able to perform many of the activities of her daily living. She goes grocery shopping twice a month. She drives a motor vehicle. She runs errands. She is able to clean her bathroom and kitchen. She swims occasionally with her daughter. Thus, the claimant's assertions about the completely disabling effects of her impairment are not totally credible.

(Tr. 19) (alteration in original).

The ALJ's paraphrasing did not include all of the relevant information. When asked about her ability to clean her home or living area, Stewart answered: "I try to do the best I can not great, but ok. I feel very tired when I clean my bathroom and kitchen." (Tr. 94). When asked about her ability to drive a car, Stewart answered: "I drive from home to my mother's approx. 20-25 min is the longest distance. Never drive long distance." (Tr. 94). Additionally, the ALJ's decision fails to mention Stewart's testimony regarding her daily naps.[6] Finally, Stewart's statement that she runs errands was mentioned as an example of an activity that requires her to take longer rest periods or naps. (Tr. 95).

An examination of the record shows that Stewart's activities are not inconsistent with her alleged limitations. "Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. Therefore, Stewart's subjective complaints do not lack credibility because she attempts to lead a normal life.

### D. Stewart's Residual Functional Capacity Compared to the Demands of Her Past Relevant Work

At step four, although the claimant has the burden of showing she can no longer perform

---

[6] During the ALJ's examination, Stewart testified, "I sleep from like between 9:00 to, and I wake up at 11:00. That's one nap. Then I wake up at 11:00 and I'll get something to eat. I'll go back to bed around 1:00 and wake at 3:00. That's two naps." (Tr. 249).

her past relevant work, the ALJ has a duty to make factual findings to support his conclusion. 20 C.F.R. §§ 404.1520(e) and 416.920(e); Social Security Ruling 82-62. Generally, the claimant's statements regarding past work are sufficient for determining the skill level, exertional demands and nonexertional demands of the work. Social Security Ruling 82-62.

A determination of Stewart's ability to do her past relevant work requires careful consideration of her statements regarding the past work requirements she can no longer meet, the reasons she is unable to meet those requirements and medical evidence establishing how her impairment limits the ability to meet mental and physical requirements of the work. When an ALJ determines that an individual is capable of performing past relevant work, the decision must contain specific findings of fact regarding: (1) the individual's RFC; (2) the physical and mental demands of the past job or occupation; and (3) whether the individual's RFC would permit a return to his or her past job or occupation. *Id.*

In her moving papers, Stewart argues that the ALJ failed to consider her severe fatigue, her need to take breaks and naps and her shortness of breath, which is aggravated by activity. In the decision, the ALJ stated:

> The claimant has past relevant work as a stockroom clerk.[7] As described by the claimant, this job required frequent sitting, no standing, walking, or climbing, and no handling, grabbing or grasping of large objects. It required no reaching. As described by the claimant, her past relevant work was 'light' in terms of exertional requirements. Therefore, based upon the claimant's residual functional capacity to perform the requirements of at least light levels of exertional activity, the claimant could return to her past relevant work as a stockroom clerk as it was previously performed. If an individual is able to perform the requirements of her past relevant work as it was previously performed, then the regulations direct a finding of 'not disabled.'" (Tr. 19).

Stewart does not claim that she is physically unable to ever perform the duties of her past relevant work. Rather, Stewart claims that she is physically unable to perform the duties of her past relevant work eight hours a day, five days a week. The ALJ's discussion of the physical demands of Stewart's past relevant work and her capacity to perform them makes no mention of

---

[7] As noted in the Commissioner's Opposition, the ALJ erred when he stated that the past relevant work described by Stewart on her Disability Report Adult form was as a "stockroom clerk." On the form, Stewart noted that her most recent job title was as a stockroom clerk, but the past relevant work that she described the duties and demands of was "Tele-communication/operator." (Tr. 85).

the job's hourly requirements. Instead, the ALJ concludes that Stewart's past work was light, that Stewart can perform light work and therefore, Stewart can return to her past relevant work. However, in order to have the RFC to perform her past work, Stewart must be able to do that work on a "regular and continuing basis." *See*, Social Security Ruling 96-8p ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

Whether the ALJ's comparison of Stewart's RFC to her past job duties is sufficient depends on whether or not he can articulate specific and legitimate reasons for rejecting Dr. Cuan's opinion, and specific, convincing reasons for rejecting Stewart's testimony regarding her limitations. If the ALJ can do so, his stated comparison is sufficient because he states that Stewart can sit for an unlimited amount of time and that her past work requires sitting but no standing, walking or climbing. If the ALJ cannot do so, he must expressly compare the hours of work required by Stewart's past work to her ability to do that work on a regular and continuing basis.

## IV.  CONCLUSION

The ALJ failed to specifically identify what evidence he found to undermine Dr. Cuan's credibility and disregard Stewart's subjective complaints. Therefore, this case must be remanded for further findings. Assuming that upon remand the ALJ adequately articulates his reasons for rejecting Dr. Cuan's Declaration and Stewart's subjective complaints, the ALJ's decision is otherwise supported by substantial evidence and free of legal error. Accordingly, plaintiff's motion for summary judgment is granted and remanded for further findings and defendant's cross-motion for summary judgment is denied.

Dated: *March 31, 2008*

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge